No. 24-3177

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

Faith Elsharkawy,

                                                                    Plaintiff – Appellant,

v.

Chisago Lakes School District Board of Education, Independent School District No. 2144, Dave Ertl, Jason Thompson, Carrie Hoffman, Jerilyn Mattson, Angela Christenson, Shira Ben-Heim, Leah Taylor, Carter Vogt, Laura Gustafson, Jane and John Does in their individual capacities,

                                                                     Defendants – Appellees.

Appeal from the United States District Court, District of Minnesota,
No. 0:20-cv-01971-DSD-DLM

REPLY BRIEF OF PLAINTIFF-APPELLANT

Lena Masri
Gadeir Abbas
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave SE
Washington, D.C. 20003
Telephone: 202-742-6420
*Counsel for Plaintiff-Appellant*

Dated: August 13, 2025

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................... 2

**TABLE OF AUTHORITIES** ................................................................ 3

**INTRODUCTION** ............................................................................... 4

**ARGUMENT** ........................................................................................ 4

    **I.**    The school's failure to disclose Jacob's suicide-related preparations it knew about is the unmet duty that allowed those preparations to culminate ............................................................................................. 4

    **II.**    The District Court used a credibility determination to discount evidence that the school had knowledge about Jacob and a friend googling nooses one week prior to his death by suicide. .................... 10

**Conclusion**……………………………………………………………….13

**CERTIFICATE OF COMPLIANCE**......................................................... 15

# TABLE OF AUTHORITIES

**Cases**
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) .............................. 13
*Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn. 2011) ................................... 8
*Foss v. Kincade*, 766 N.W.2d 317, 322 (Minn. 2009) .......................................... 5
*Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996) .................... 11
*Sandborg v. Blue Earth Cnty.*, 615 N.W.2d 61, 64 (Minn. 2000) ...................... 6
*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011 ............... 11
*United States v. Sharpfish*, 408 F.3d 507, 511 (8th Cir. 2005) ......................... 7
*United States v. Two Elk*, 536 F.3d 890, 900 (8th Cir. 2008) ........................... 7

# INTRODUCTION

When the district court dismissed this case, it did so while acknowledging evidence that the school district had information that Jacob and a friend were researching "suicide methods" at school before the suicide. The school did not share it with anyone from the families until after Jacob's death. This failure to warn evidence—from Ms. Kelly Johnson's testimony—should have been enough to take this case to a jury.

There is no way to ignore this evidence, and the district court did not ignore it. But what the district court did was the next worst thing. The district court assessed Ms. Johnson's credibility and weighed her testimony against other evidence in the case. In doing so, the district court acted as the jury—a role not permitted at summary judgment and one that is reserved for the factfinder during trial.

# ARGUMENT

### I. The school's failure to disclose Jacob's suicide-related preparations it knew about is the unmet duty that allowed those preparations to culminate

The school district had information that Jacob and his friend were researching "suicide methods" at school. App. 393-94, R.Doc. 186-7 pp.2-3; App.

353-91, R.Doc. 185-10 pp.2-40 at 13:21-18:22. And Chisago Lakes did not tell anyone about that until after Jacob's death. *Id.*

The school district acknowledges (at 31) its "common-law duty to protect students from harm that is foreseeable and probably could have been prevented by the exercise of ordinary care." While the harm of suicide is not generally foreseeable, it is here. That is because the school district knew about concrete measures—researching "suicide methods" at school—Jacob had taken to advance his self-harm plans. *See also Foss v. Kincade*, 766 N.W.2d 317, 322 (Minn. 2009) ("When determining whether a danger is foreseeable, we look at whether the specific danger was objectively reasonable to expect") (internal quotes omitted).

The unmet duty here is simple: Chisago Lakes' failure to disclose these suicide preparations to Jacob's family. Had the school district warned Elsharkawy, Jacob's family could have followed the simple preventative measures—be with him at all times and put away things that Jacob could use to harm himself—that would have stopped Jacob's death. Add.14-17, App.413-416, R.Doc.197 at 14-17; App.387, R.Doc. 186-7 at ¶ 3.

In this case, Elsharkawy has evidence that the school district knew her child (and another student) was researching suicide at school. *Id.* That

knowledge gave rise to a duty "to protect against a known possibility of self-inflicted harm." *See Sandborg v. Blue Earth Cnty.*, 615 N.W.2d 61, 64 (Minn. 2000)

But the school did not share this information with any of the families until after Jacob's death. (App.356-362; R.Doc.185-10, p.11-17). If they had, Jacob's death could have easily been interrupted by the warning the school gave too late. The wrongful death claim is strong and a jury must resolve it.

Days after Jacob's death, the school district did what it had a duty to do when it first learned of Jacob researching nooses. App. 387-88, R.Doc. 186-7 at ¶¶ 2-8. A teacher (Ben Haim) and a counselor (Malm) met with Ms. Johnson in person. *Id.* at ¶ 2-3. They did so out of a concern that Ms. Johnson's son may harm himself as well. *Id.* At this in-person meeting, the school's message to Ms. Johnson was to "remove knives or anything [Ms. Johnson's son] could potentially hurt himself with" and "make sure he has someone with him all the time." *Id.* at ¶¶ 5-6. Had Ben Haim and Malm given Ms. Elsharkawy that same warning when their duty to do so first arose (before Jacob's death), Ms. Elsharkawy would have heeded their simple advice to prevent Jacob from completing suicide.

Avoiding the substance of the evidence, the school district's response (at

37) is to label Ms. Johnson's testimony "unsubstantiated, inadmissible hearsay." That is not a ruling the district court made below, and this Court should not exclude Ms. Johnson's testimony as "inadmissible hearsay" now for three reasons.

First, the district court itself considered the evidence and did not exclude Ms. Johnson's testimony as hearsay. The district court did so deliberately, measuring Ms. Johnson's testimony against the testimony of other witnesses. *United States v. Two Elk*, 536 F.3d 890, 900 (8th Cir. 2008) ("Evidentiary rulings are reviewed for abuse of discretion," giving due "deference to the district judge who saw and heard the evidence."). The district court even fairly summarized Ms. Johnson's account, explaining that the testimony, if credited, is evidence the school had information that "approximately one week before Jacob died," Jacob and his friend "were caught at school searching the Internet for information about suicide methods." Add.19, App.417, R.Doc.197 at 18.

The district court did not find the evidence to be hearsay. And it dismissed the evidence on credibility grounds only. Add.28, App.426, R.Doc.197 at 27. The school district did not appeal the district court's decision to consider Ms. Johnson's testimony. This Court should not allow the school district to shoehorn an appeal it did not file into an opposition brief. *See United*

7

*States v. Sharpfish*, 408 F.3d 507, 511 (8th Cir. 2005) ("When a defendant fails to object to admission of evidence below, we review the issue for plain error.")

Second, Ms. Johnson's testimony is not offered only for the truth of the matter asserted. Rather, the testimony is evidence of Sheena Malm's knowledge (that the school had information that Jacob had researched nooses before his death) rather than the specific facts asserted (that a student saw Jacob and his friend googling about nooses and reported it). *See* Add.35, App.387-88, R.Doc. 186-7 at ¶¶ 5-8 (recounting how the school had knowledge about Jacob and his friend "searching…how to hang yourself or tie a noose around one week before Jacob's death").

It does not matter to Elsharkawy's claim how the school or Sheena Malm came to know about Jacob's suicide preparations at school. *See Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn. 2011) ("Inaction by a defendant—such as a failure to warn—constitutes negligence only when the defendant has a duty to act for the protection of others.") It is enough that the school knew about such preparations and did not act until after Jacob's death.

Third, even if the Court considers Ms. Johnson's testimony hearsay, it is admissible hearsay. That is because Malm's disclosure to Ms. Johnson qualifies as a party-opponent admission. Fed. R. Evid. 801(d)(2). When Malm told Ms.

8

Johnson about Jacob and her son's suicide research, Malm was doing so, per Rule 801(d)(2)(D), in her capacity as the school districts "agent or servant." *Id.* And the statement itself was "within the scope of agency" the school district gave to its counselors. *Id.* Indeed, when Ms. Malm met with Ms. Johnson days after Jacob's death alongside school employees to warn a family about a risk of self-harm, she did so "within the scope of agency" the Chicago Lakes provides her. *Id.*

This party-opponent admission is adverse—to put it mildly. The warning Malm provided Ms. Johnson days after Jacob's death could have been provided to Ms. Elsharkawy before Jacob's death. That is why Malm admitted these things sheepishly to Ms. Johnson; Malm knew that the school district had made a mistake. *See* Add.35, App.388, R.Doc. 186-7 at ¶¶ 6-7 ("I asked Malm if she knew this before Jacob died…[and] why they didn't alert the parents before this if they knew and if [Jacob] had died, would they have told us at all.")

Had the school shared the information it had about Jacob researching suicide preparations with his family before his death and given Ms. Elsharkawy the same warnings and advice it gave Ms. Johnson—to "make sure he has someone with him all the time" and "remove…anything he could

9

potentially hurt himself with"—that would have been enough to prevent his death. *Id.* at ¶ 3.

The school district had a duty to warn Jacob's family about the suicide methods it had information that Jacob was researching at school, and had school officials given Jacob's mother the same warning before the suicide it gave to Ms. Johnson after it, Jacob's death could have been avoided.

II. **The District Court used a credibility determination to discount evidence that the school had knowledge about Jacob and a friend googling nooses one week prior to his death by suicide.**

The language of the district court's decision undermines the school district's arguments that the decision avoided making forbidden credibility determinations and weighing evidence. That order is explicit, assessing whether Ms. Johnson was "credible" and whether other evidence "corroborated" her testimony. Add.28, App.426, R.Doc.197 at 27. On this basis, the district court disregarded Ms. Johnson's testimony.

But when the district court dismissed this case, it acknowledged the obvious importance of Ms. Johnson's testimony that, just a week or so before his death, Jacob and a friend "were caught at school searching the internet for information about suicide methods." *Id.* at 18. It considered her testimony extensively. *Id.* at 17-19. And it had to. For Elsharkawy's case, Ms. Johnson's

testimony is load-bearing and the briefing to date before this court and the district court reflect that.

The district court, however, dismissed Ms. Johnson's testimony as not "credible evidence." *Id.* at 27. After reviewing conflicts between Ms. Johnson's testimony and that of other witnesses, the district court concluded that "there is no evidence in the record to corroborate Johnson's account." *Id.* at 19. But, in "weighing evidence" and determining Ms. Johnson's credibility, the district court improperly usurped the role of the jury. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). At summary judgment, this is against the rules.

At summary judgment, "the court should not weigh the evidence [or] make credibility determinations." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996). The district court's decision to discount Ms. Johnson's testimony was a credibility determination based on the district court's own weighing of the evidence. There is no other way to read the district court's opinion.

The problem with the district court's credibility determination is that a jury may see it differently. A jury may believe Ms. Johnson, because she is not a party to this case and vividly recalls her shock and revulsion at finding out

from Malm that the school had information about Jacob researching nooses that it did not disclose to his family. *See* Add.35, App.388, R.Doc. 186-7 at ¶¶ 6-7 ("I immediately asked, in tears, why they didn't alert the parents before this."). After all, this a mother receiving an ominous warning from a school counselor in the wake of a community-rattling suicide.

A jury could believe Ms. Johnson's testimony about how her child's teacher and a school counselor met with her after Jacob's death to express concerns about her son's physical safety. *Id*. at ¶¶ 2-3. The jury may believe her account of that meeting, as well her account of the school counselor's follow-up call. *Id*. at ¶¶ 5-8. Indeed, it is not everyday that someone receives a call from school about the possibility of one's child committing suicide.

Ms. Johnson's memory of the conversation, furthermore, is very specific. *See* Add.35-36, App.387-88, R.Doc. 186-7. After Malm had her first counseling session with Ms. Johnson's son, Malm explained to Ms. Johnson the basis of the school's concerns. *Id*. During this phone conversation, Malm shared her concern with Ms. Johnson that "Jacob and Skyelar had a suicide pact." *Id*.

Malm told Ms. Johnson about her fear of a suicide pact in the same breath she told Ms. Jonson that "Jacob and Skyelar together had been searching on a school computer how to hang yourself or tie a noose." *Id*. at ¶¶ 5-7. Ms. Johnson

12

remembers the back and forth of this call and remembers being reduced to tears by what Malm was telling her, overcome with the sense that the school could have—but did not—warn Jacob's family. *Id.*

This is a very specific retelling of a conversation Ms. Johnson remembers distinctly. A jury that believes Ms. Johnson will view her testimony as evidence that the school had information about Jacob making suicide preparations that they kept to themselves until after his death. And that is enough, on remand, to put the wrongful death claim to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (describing the task of a trial court at summary judgment to determine whether "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party").

## **CONCLUSION**

For the reasons above and those in Elsharkawy's opening brief, this Court should VACATE the district court's summary judgment decision and remand for further proceedings consistent with this Court's decision.

Respectfully submitted,

/s/ Lena Masri

Lena Masri
Gadeir Abbas
CAIR LEGAL DEFENSE FUND
453 New Jersey Avenue SE Washington, DC 20003
Telephone: 202-742-6420
E-mail: lmasri@cair.com
gabbas@cair.com

*Attorneys for Appellant*

**CERTIFICATE OF COMPLIANCE**

Under Federal Rule of Appellate Procedure 32(a)(7)(B), I hereby certify that the foregoing motion of Appellants complies with (1) the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) because it was written in Century Schoolbook, 14-point font using Microsoft Word for Microsoft 365 and (2) the type-volume limitations contained in Federal Rule of Appellate Procedure 27(d)(2)(A), because it contains 2,484 words.

/s/ Lena Masri